KAUFHOLD GASKIN GALLAGHER DLLP
STEVEN S. KAUFHOLD, ESQ. (SBN 157195)
Email: SKaufhold@KaufholdGaskin.com
QUYNH K. VU, ESQ. (SBN 286631)
Email: QVu@KaufholdGaskin.com
388 Market St., Suite 1300
San Francisco, CA 94111
Telephone: 415-445-4620
Facsimile: 415-874-1071

ROSENFELD & KAPLAN LLP
TAB K. ROSENFELD (*pro hac vice* pending)
Email: tab@rosenfeldlaw.com
1180 Avenue of the Americas, Ste 1920
New York, NY 10036
Telephone: 212-682-1400

*Attorneys for Applicants Karam Salah Al Din
Awni Al Sadeq and Stokoe Partnership Solicitors*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Application of KARAM SALAH AL DIN AWNI AL SADEQ and STOKOE PARTNERSHIP SOLICITORS for an Order Under 28 U.S.C. §1782 to Conduct Discovery for Use in Foreign Proceedings | Case No. 3:20-mc-80224 <br><br> **MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................iii-iv

PRELIMINARY STATEMENT ....................................................................................1

FACTUAL BACKGROUND ........................................................................................4

ARGUMENT ...............................................................................................................13

   I.     THE APPLICATION MEETS THE STATUTORY REQUIREMENTS .......13

   II.    THE DISCRETIONARY FACTORS WEIGH IN FAVOR OF MR. AL
        SADEQ'S AND STOKOE'S APPLICATION ................................................16

       A.  Google, Dropbox, Cloudflare, Ngrok, and Twilio Are Not Participants in
           the Foreign Proceeding ..............................................................................16

       B.  The Foreign Tribunal Is Receptive to U.S. Judicial Assistance ................17

       C.  The Application Does Not Circumvent the
           Rules of the Foreign Tribunals ..................................................................18

       D.  The Application Is Tailored to Avoid Unnecessary Burdens in Accordance
           with the Federal Rules of Civil Procedure ................................................19

CONCLUSION ............................................................................................................21

ii

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ............................................................................ *passim*

*In re Adeal Imp. LLC*,
    No. 17-mc-80103-HRL,
    2017 U.S. Dist. LEXIS 133562 (N.D. Cal. Aug. 21, 2017) ...................................13

*In re Application of Wallis*,
    No. 18-mc-80147-DMR, 2018 U.S. Dist. LEXIS (N.D. Cal. Oct. 24, 2018)...........19

*In re Cathode Ray Tube Antitrust Litig.*,
    No. C-07-5944-SC, 2013 U.S. Dist. LEXIS 8255 (N.D. Cal. Jan. 17, 2013)..........19

*In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation pour le
Traitement du Mais*,
    No. C13-80261-MISC LHK (HRL),
    2013 U.S. Dist. LEXIS 169009 (N.D. Cal Nov. 21, 2013)........................18, 19, 20

*In Re Giorgio Armani S.P.A.*,
    No. 17-mc-80067-HRL,
    2017 U.S. Dist. LEXIS 83512 (N.D. Cal. May 31, 2017) ............................... *passim*

*In re Joint Stock Co. Raiffeinsenbank*,
    No. 16-mc-80203-MEJ,
    2016 U.S. Dist. LEXIS 152090 (N.D. Cal. Nov. 2, 2016) ..................................1, 17

*In re Letter Rogatory—Request for Int'l Judicial Assistance from the Harju Country
Court in Estonia*,
    No. 17-mc-80044-MEJ,
    2017 U.S. Dist. LEXIS 62115 (N.D. Cal. Apr. 24, 2017) ....................................16

*In re Pioneer Corp. for an Order Permitting Issuance of Subpoenas to Take Discovery in
a Foreign Proceeding*,
    No. 18-mc-0037-UA,
    2018 U.S. Dist. LEXIS 78609, (C.D. Cal. May 9, 2018) ......................................15

*In re Qualcomm Inc.*,
    No. 18-mc-80134-NC,
    2018 U.S. Dist. LEXIS 213919, (N.D. Cal. Dec. 18, 2018) ..................................15

*MetaLab Design, Ltd. v. Zozi Int'l, Inc.*,
    No. 17-mc-80153-MEJ,
    2018 U.S. Dist. LEXIS 5448 (N.D. Cal. Jan. 11, 2018) ................................18, 19

*Palantir Techs., Inc. v. Abramowitz*,
    415 F. Supp. 3d 907 (N.D. Cal. 2019) ....................................................................15

*Royal Bank of Scotland Plc v. Hicks*
    [2011] EWHC (Ch) 287 ...........................................................................................17

*Siemens AG v. Western Digital Corp.*,
    2013 U.S. Dist. LEXIS 159266, (C.D. Cal. Nov. 4, 2013).....................................17

**Statutes**

28 U.S.C. § 1782 .................................................................................... *passim*

1

## **PRELIMINARY STATEMENT**

The applicants Karam Salah Al Din Awni Al Sadeq ("Mr. Al Sadeq") and Stokoe

Partnership Solicitors ("Stokoe" and together with Mr. Al Sadeq, the "Applicants"),

respectfully file this *ex parte*[1] application (the "Application") for an order under 28 U.S.C. §

1782 to conduct discovery for use in foreign proceedings.

The requested relief is for the purpose of obtaining limited, but necessary, discovery

in aid of civil proceedings initiated by the Applicants and currently pending in the High

Court of Justice of England and Wales, Queen's Bench Division, captioned: Karam Salah Al

Din Awni Al Sadeq v. Dechert, LLP, Neil Gerrard, David Hughes, and Caroline Black,

Claim No. QB-2020-000322 (the "Al Sadeq Litigation"); Stokoe Partnership Solicitors v. Mr

Paul Robinson, Company Documents Limited, and Mr Oliver Moon, Claim No. QB-2020-

002218; Stokoe Partnership Solicitors v. Mr Patrick Tristram Finucane Grayson, Grayson +

Co Limited, Mr Stuart Robert Page, and Page Corporate Investigations Limited, Claim No.,

QB-2020-002492 (the "Hacking Claims", and together with the Al Sadeq Litigation, the

"Foreign Proceedings").

---

[1] This Court routinely entertains *ex parte* applications pursuant to Section 1782. *See In re
Adeal Imp. LLC*, No. 17-mc-80103-HRL, 2017 U.S. Dist. LEXIS 133562, at *2-3 (N.D. Cal.
Aug. 21, 2017) ("Ex Parte applications are appropriate for seeking discovery pursuant to
Section 1782."); *In re Joint Stock Co. Raiffensenbank*, No. 16-mc-80203-MEJ, 2016 U.S.
Dist. LEXIS 152090, at *10 (N.D. Cal. Nov. 2, 2016) ("[O]rders granting §
1782 applications typically only provide that discovery is 'authorized'; thus the opposing
party may still raise objections and exercise its due process rights by challenging the
discovery after it is issued via a motion to quash, which mitigates concerns regarding any
unfairness of granting the application *ex parte*."). This is because an opposing party may
move to quash a subpoena issued pursuant to a Section 1782 application, thereby preserving
its due process rights. *See In re Adeal Imp. LLC*, 2017 U.S. Dist. LEXIS at *2-3; *In re Joint
Stock Co. Raiffensenbank*, 2016 U.S. Dist. LEXIS at *10.

MEMORANDUM ISO *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C § 1782

In the Al Sadeq Litigation, Mr. Al Sadeq alleges that the defendants Dechert, LLP ("Dechert UK"), Neil Gerrard ("Gerrard"), David Hughes ("Hughes"), and Caroline Black ("Black), committed serious wrongs against him in the course of an investigation undertaken by them, into alleged fraud committed by Dr. Khater Massaad ("Dr. Massaad") and others, including Mr. Al. Sadeq, against their former employer, the RAK Investment Authority ("RAKIA").   Al Sadeq has brought claims against the defendants in the Al Sadeq Litigation for breaches of United Arab Emirates (the "UAE") criminal law and procedure, the UAE Constitution, and breach of his human rights as a matter of UAE and international law, and has sought damages stemming from, *inter alia*, his severe psychological and physical harm, pain and suffering, financial losses, and damage to reputation.

Following the initiation of the Al Sadeq Litigation, Mr. Al Sadeq's legal team, which includes Stokoe Partnership Solicitors, Detained in Dubai, 4 Stone Buildings, and Maltin PR (collectively "Mr. Al Sadeq's Legal Team"), has become the target of an online hacking campaign.  As is relevant to this Application, Mr. Al Sadeq's Legal Team has received numerous phishing[2] emails from Google, Dropbox Inc, Cloudflare, Ngrok, and Twilio SendGrid accounts.

In order to ascertain the identity of the individuals behind the hacking attempts and to put a stop to their unlawful conduct, Stokoe initiated the Hacking Claims.  The individuals

---

[2] Scammers use phishing emails or text messages to trick individuals into giving them personal information, such as, passwords and accounts numbers, in order to gain access to email accounts, bank accounts, and other personal accounts.  See How to Recognize and Avoid Phishing Scams, FED. TRADE COMM'N CONSUMER INFO., https://www.consumer.ftc.gov/articles/how-recognize-and-avoid-phishing-scams (last visited Dec. 10, 2020).  The phishing emails "look like they are from a company you know or trust" such as a "bank, credit card company, or social networking site."  *Id.*

MEMORANDUM ISO *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C § 1782

named as defendants in the Hacking Claims are engaged in the business of corporate intelligence gathering and were instructed to obtain confidential information, including financial records and banking information, regarding Mr. Al Sadeq's Legal Team.

The Applicants have reason to believe that the defendants in the Hacking Claims are acting on or behalf of RAKIA and/or the defendants in connection with the Al Sadeq Litigation.  The Applicants further believe that these unlawful attempts to gather confidential information from Mr. Al Sadeq's Legal Team are consistent with the pattern of human rights abuses Mr. Al Sadeq alleges in his Claim and are further attempts to interfere with Mr. Al Sadeq's access to legal representation.

Accordingly, Mr. Al Sadeq and Stokoe respectfully request leave of the Court to subpoena Google Inc. ("Google"), Dropbox Inc. ("Dropbox"), Cloudflare Inc. ("Cloudflare"), Ngrok, LLC ("Ngrok"), and Twilio, Inc. ("Twilio") in accordance with 28 U.S.C. § 1782 to obtain discovery for use in the Foreign Proceedings.

This Application meets all of the statutory requirements and discretionary factors applicable to applications for discovery under 28 U.S.C. § 1782.  As to the statutory requirements, Mr. Al. Sadeq and Stokoe seek discovery 1) from Google, Dropbox, Cloudflare, Ngrok, and Twilio, all of which are corporations headquartered within this District, 2) for use in proceedings (the Foreign Proceedings), 3) that are pending in a foreign tribunal the (High Court of Justice of England and Wales, Queen's Bench Division), in which 4) Mr. Al Sadeq and Stokoe are the claimants, and thus, interested parties.

Additionally, as set forth in more detail below, the Application also satisfies each of the four discretionary factors the Supreme Court articulated *Intel Corp. v. Advanced Micro*

3

*Devices, Inc.*: 1) Google, Dropbox, Cloudflare, Ngrok, and Twilio are not parties to the Foreign Proceedings, 2) U.K. Courts are receptive to and actually encourage discovery under Section 1782 and the Application is not an attempt to circumvent the High Court of Justice of England and Wales, Queen's Bench Division's proof-gathering requirements, 3) and the requested discovery is neither unduly burdensome nor overly intrusive.  Accordingly, as set forth in the proposed Order, the discovery sought is limited in time and is narrowly tailored. The discovery requested by Applicants will aid in proving their Claims in the Foreign Proceedings.

As such, based on the foregoing and as set forth more fully below, Mr. Al Sadeq and Stokoe respectfully submit that their Application for discovery under Section 1782 should be granted.

## FACTUAL BACKGROUND

The factual background of the disputes underlying the Foreign Proceedings is set forth in detail in the Claims annexed to the Declaration of Haralambos Tsiattalou ("Tsiattalou Decl.") as Exhibit A, Exhibit D, Exhibit G, and Exhibit H.  Those acts are summarized below, as well as the need for the requested discovery.

**The Al Sadeq Litigation**

Mr. Al Sadeq is a lawyer and Jordanian citizen who is a resident of the United Arab Emirates.  For the past six years, he has been incarcerated in RAK, one of the constituent Emirates of the UAE, for alleged involvement in fraudulent transactions allegedly committed against his former employer, RAKIA.  (Tsiattalou Decl. Ex. A, ¶ 1.)  Mr. Al Sadeq was employed by RAKIA from November 2008 and 2012, first as a legal advisor, then Group

4

Legal Director, and then Deputy Chief Executive Officer of RAKIA, reporting to RAKIA's then-CEO, Dr. Massaad. (Tsiattalou Decl. Ex. A, ¶ 35).  Mr. Al Sadeq denies any involvement in wrongdoing and maintains that the charges against him were politically motivated on the part of the Ruler of Ras Al Khaimah ("RAK") in an attempt to conceal the Ruler's own close involvement in RAKIA's activities, and that he was convicted on the basis of false confessions obtained from him under duress by the defendants in the Al Sadeq Litigation.  (Tsiattalou Decl. Ex. A, ¶ 1).

Defendant Gerrard is and was at all material times a partner at the UK-based law firm Dechert UK, where he is global co-head of Dechert's white collar and securities litigation practice.  (Tsiattalou Decl. Ex. A, ¶ 4).  Defendant Hughes was, at all material times, a partner at Dechert UK, who worked closely with Gerrard.  (Tsiattalou Decl. Ex. A, ¶ 5). Defendant Black is and was at all material times, a Partner at Dechert UK specializing in corporate investigations, working closely with Mr. Gerrard.  (Tsiattalou Decl. Ex. A, ¶ 6).

Mr. Gerrard is alleged to have been appointed by the Ruler of RAK to lead an investigation into alleged fraud committed by Dr. Massaad against RAKIA.  (Tsiattalou Decl. Ex. A, ¶¶ 8, 29).  In the Claim, Mr. Al Sadeq alleges that serious wrongs were committed against him by Mr. Gerrard, Mr. Hughes, Ms. Black, and Dechert UK in relation to that investigation.  (Tsiattalou Decl. Ex. A, ¶ 8).  In September 2014, Mr. Al Sadeq was abducted from outside of his family home in Dubai and forcibly transported to RAK by men claiming to be from the RAK State Security Investigations.  (Tsiattalou Decl. Ex. A, ¶¶ 43-45).  Once in RAK, Mr. Al Sadeq was placed in custody in solitary confinement, without having been arrested or told what (if any) charges or allegations were being made against

5

him; he was subjected to torture and inhumane treatment while incarcerated in solitary confinement for around 560 days; he was denied access to legal representation; his family was threatened and he was forced to sign false confessions under duress which were used in order to convict him and to implicate others including Dr. Massaad.  (Tsiattalou Decl. Ex. A, ¶¶ 33, 48).  These abuses are alleged to have been orchestrated by Gerrard with the assistance of the other defendants.  (Tsiattalou Decl. Ex. A,¶¶ 33, 47).  During his detention, Mr. Al Sadeq was interrogated several times by Gerrard, assisted by the other defendants, in an aggressive fashion, was pressured by threats and false promises to "cooperate" by giving false information to implicate Dr. Massaad, as well as other alleged co-conspirators, including Mr. Jihad Quzmar ("Mr. Quzmar"), Mr. Gela Mikadze, and Mr. Farhad Azima ("Mr. Azima"), with respect to fraud perpetrated in connection with RAKIA, and was coerced to sign false confessions.  (Tsiattalou Decl. Ex. A, ¶¶ 51, 61-67, 98, 114, 118-132, 173-175, 178-184).

As a result of such wrongs alleged to have been perpetrated by the defendants, Mr. Al Sadeq brought claims for breaches of UAE criminal law and procedure, the UAE Constitution, and breach of his human rights as a matter of UAE and international law, and has sought damages stemming from, *inter alia*, his severe psychological and physical harm, pain and suffering, financial losses, and damage to reputation.  (Tsiattalou Decl. Ex. A, ¶¶ 9, 220-229, 294-299).

**The Hacking Proceedings**

Stokoe Partnership Solicitors was retained to represent Mr. Al Sadeq in October 2019.  (Tsiattalou Decl. ¶ 8).  Although the claim form filed in connection with the Al Sadeq

MEMORANDUM ISO *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C § 1782

Litigation was not served until March 2020, the fact of its issue and its contents, including Stokoe's representation of Mr. Al Sadeq, were made public by an article published by Detained in Dubai, a human rights advocacy organization, in February 2020.  (Tsiattalou Decl. ¶ 9).

As set forth in detail in the accompanying Tsiattalou Decl., following the initiation of the Al Sadeq Litigation, in February and March 2020, Stokoe Solicitor, Haralambos Tsiattalou ("Mr. Tsiattalou") and other individuals associated with Mr. Al Sadeq's Legal Team travelled to Dubai to meet with Mr. Al Sadeq.  (Tsiattalou Decl. ¶ 11).  During the course of those visits, members of Mr. Al Sadeq's Legal Team found themselves subjected to intimidation and surveillance by individuals they believed to be involved with RAKIA and the Al Sadeq Litigation defendants, including a Mr. Stuart Page who Mr. Tsiattalou observed in the lobby of his hotel during one of these visits.  (Tsiattalou Decl. ¶ 13).  It is believed that this surveillance was an attempt to intimidate Mr. Al Sadeq's Legal Team and impede Mr. Al Sadeq's access to legal representation.

In late March 2020, Oliver Moon ("Mr. Moon"), a private investigator, approached Alexander Sawyer ("Mr. Sawyer") of Quaestio Intelligence Services Ltd ("Quaestio"), a commercial investigation and intelligence gathering agency working on behalf of Stokoe, and informed Mr. Sawyer that he had been instructed to obtain confidential information regarding Stokoe.  (Tsiattalou Decl. ¶ 14).   Mr. Moon revealed that he received instructions from John Gunning, who it was later uncovered was instructed by Paul Robinson ("Mr. Robinson") on April 2, 2020, to obtain Stokoe's banking coordinates; on April 9, 2020, to obtain access to Stokoe's trading bank account and transactional data for Stokoe's business bank account for

7

the preceding three months; and on April 22, 2020, to provide information relating to

Stokoe's client account including transactional information for the month of March 2020.

(Tsiattalou Decl. ¶¶ 14, 29).  Through Mr. Moon, Stokoe also learned that others working on

behalf of Mr. Al Sadeq in the Al Sadeq Litigation, including Maltin PR, a legal public

relations and litigation support group, and Detained in Dubai were also targets of these

information gathering efforts.  (See Tsiattalou Decl. ¶¶ 15, 39).  Based on this information,

Stokoe initiated a civil proceeding on June 30, 2020, in the High Court of Justice of England

and Wales, Queen's Bench Division, captioned: Stokoe Partnership Solicitors v. Paul

Robinson, Company Documents Ltd, and Oliver Moon, Claim No. QB-2020-00218 (the

"Robinson Proceeding").

As part of a Consent Order issued in the Robinson Proceeding, Mr. Moon and Mr.

Robinson issued sworn affidavits admitting that they were instructed to access, and did

access, Stokoe's banking information and transactional data as well as confidential

information relating to others involved in the Al Sadeq Litigation.  (See Tsiattalou Decl. ¶

32, Ex. F).  In Mr. Robinson's affidavit, he stated that Patrick Grayson instructed him to

obtain confidential information from Mr. Al Sadeq's Legal Team.  (Tsiattalou Decl. ¶ 32, Ex.

F ¶ 8).

Based on the information Mr. Robinson provided in his affidavit, Stokoe initiated a

second civil proceeding on July 17, 2020, in the High Court of Justice of England and Wales,

Queen's Bench Division, captioned: Stokoe Partnership Solicitors v. Mr Patrick Tristram

Finucane Grayson, Grayson + Co. Limited, Mr Stuart Robert Page, and Page Corporate

Investigations Limited, Claim No. QB-2020-002492 (the "Grayson Proceeding").  In the

8

Grayson Proceeding, Stokoe sought, *inter alia*, an order to compel Mr. Grayson and his company to reveal the source of their instructions, any further wrongdoing, and to obtain injunctive relief to prevent them from further wrongdoing.  (Tsiattalou Decl. ¶ 33).  Pursuant to the Court's order, Mr. Grayson submitted an affidavit wherein he denied ever obtaining confidential information regarding Stokoe and denied ever instructing Mr. Robinson to obtain such confidential information, assertions that were in stark contradiction to the facts set forth in Mr. Robinson's affidavit.  (Tsiattalou Decl. ¶¶ 35, 36, Ex. J. ¶ 4.1).

Through the initiation of the Hacking Claims, Stokoe is attempting to ascertain the identity of the individuals who are orchestrating the hacking campaign against Mr. Al Sadeq's Legal Team.  While Stokoe has identified some of the individuals who were involved, the identity of the ultimate perpetrators remains unknown.  Thus, Mr. Al Sadeq's Legal Team remains a target of this coordinated hacking campaign which has continued throughout the pendency of the Foreign Proceedings and threatens to undermine the fair conduct of the Al Sadeq Litigation as well as the confidentiality and relationship between Mr. Al Sadeq and his legal team and to further impinge upon the rights of Mr. Al Sadeq.

**The Discovery Sought**

The Foreign Proceedings are ongoing, and Mr. Al Sadeq and Stokoe are engaged in the process of seeking information and documents to support their Claims.  The parties from whom discovery is sought are US-based Google, Cloudflare, Dropbox, Ngrok, and Twilio.

As set forth in detail in the accompanying Tsiattalou Decl. and above, since the initiation of the Al Sadeq Litigation, Mr. Al Sadeq's Legal Team has been the subject of a hacking and surveillance campaign believed to be by or at the direction of the defendants in

9

the Al Sadeq Litigation.  (Tsiattalou Decl. ¶¶ 11-15, 35, 37, 38).  Mr. Al Sadeq's Legal Team has received numerous phishing emails which appear to be targeted attempts to access personal information.  (Tsiattalou Decl. ¶¶ 35, 36).  The Applicants have reason to believe that the defendants in the Al Sadeq Litigation are behind this hacking campaign as the timeline of these attempts align with the initiation of the Al Sadeq Litigation, and the individuals targeted are all connected to the Al Sadeq Litigation.

Upon information and belief, the defendants have engaged in the same improper information gathering in connection with other investigations they conducted on behalf of RAKIA.  Specifically, Gerard worked with Stuart Page, a private investigator, who was accused of engaging in unlawful hacking in related proceedings involving Mr. Azima before the High Court of Justice Business and Property Courts of England and Wales Business List (ChD) entitled: Ras Al Khaimah Investment Authority v. Farhad Azima, Case No. HC-2016-002798.  (See Tsiattalou Decl. ¶¶ 21, 27).  During a hearing in that proceeding, Mr. Page testified that in the course of his investigation into collusion between Dr. Massaad and members of the Ruler's family, he utilized the services of Insight, an Israeli company, who "were specialists at obtaining information from confidential sources" engaged in gathering electronic data which included "using the dark web, open source information on the internet." (Tsiattalou Decl, Ex. B ¶ 269).  Gerrard also testified that the information, which formed the basis of the fraud accusations RAKIA brought against Mr. Azima, was obtained through hacking into Mr. Azima's personal accounts.  (Tsiattalou Decl. Ex. K, p. 69-70).

It is believed that Mr. Al Sadeq and his legal team are being subjected to the same improper information gathering techniques that the defendants employed in their

10

investigations of Dr. Massaad and Mr. Azima.  (See Tsiattalou Decl. ¶¶ 19-27).  Mr. Al Sadeq's legal team has received numerous phishing emails sent to their email addresses from Google, Dropbox, Cloudflare, Ngrok, and Twilio SendGrid accounts.  (Tsiattalou Decl. ¶¶ 37, 38).  More specifically, Radha Stirling ("Stirling"), founder of Detained in Dubai, who has published articles about the Al Sadeq Litigation and has aided Mr. Al Sadeq in raising awareness amongst human rights activists and non-governmental organizations about his case, received a phishing email from a Google account, dutrouxjustine@gmail.com. (Tsiattalou Decl. ¶ 38).  That same email address sent Android Package files[3] to Detained in Dubai email accounts.  (Tsiattalou Decl. ¶ 38).  An analysis conducted of those APK files by Mr. Al Sadeq's Legal Team, showed that the APKs communicated with a number of Ngrok server addresses.  (Tsiattalou Decl. ¶ 38).  Stirling was also the subject of approximately four (4) phishing attempts using content hosted on Dropbox sent to her email address radha@radhastirling.com.  (Tsiattalou Decl. ¶ 38).  Approximately twenty-six (26) phishing attempts were sent to the email addresses of Alastair Tomson ("Tomson") of 4 Stone Buildings, Nick Wright ("Wright") of 4 Stone Buildings, and Stirling by domains hosted on Cloudflare.  Google Firebase accounts were used in approximately twenty (20) phishing attempts targeting the email accounts of Tomson, Wright, Stirling, and Tim Maltin, of Maltin Litigation Support Group.  (Tsiattalou Decl. ¶ 38).  Lastly, approximately ten (10) phishing

---

[3] An Android Package Kit, or APK, is "used to distribute applications on Google's Android operating system." Tim Fisher, What Is an APK File?, LIFEWIRE, https://www.lifewire.com/apk-file-4152929 (June 26, 2020). APKs have been used in phishing attempts to access banking and financial applications on individuals' Android products. See, e.g., Meera Narendra, #Privacy: Phishing Campaign Found Targeting Android Devices, PRIVSEC REPORT, https://gdpr.report/news/2020/02/11/privacy-phishing-campaign-found-targeting-android-devices/ (Feb. 11, 2020).

11

attempts were sent to Stirling's, Maltin's, and Mr. Tsiattalou's email addresses from accounts utilizing Twilio SendGrid services.  (Tsiattalou Decl. ¶ 38).

Mr. Al Sadeq and Stokoe have reason to believe that the individuals behind these hacking attempts are associated with the defendants in the Al Sadeq Litigation.  This belief is grounded in the fact that these attempts all appear in some way to correspond to the Al Sadeq Litigation.  (Tsiattalou Decl. ¶ 39).  In particular, the hacking attempts target Mr. Al Sadeq's Legal Team, and the attempts began on or about February 2020 when information about the claim of form and Stokoe's representation of Mr. Al Sadeq became public. (See Tsiattalou Decl. ¶ 39).

 Accordingly, upon information and belief, Google, Dropbox, Cloudflare, Ngrok, and Twilio have information, documents, and material, which would shed further light on the defendants' continued human rights abuses and attempts to interfere with Mr. Al Sadeq's legal representation, which will provide evidence germane to Mr. Al Sadeq's and Stokoe's Claims in the Foreign Proceedings.

Thus, Mr. Al Sadeq and Stokoe seek leave to serve the subpoenas annexed to the Kaufhold Decl. as Exhibit A, Exhibit B, Exhibit C, Exhibit D, and Exhibit E, in which Mr. Al Sadeq and Stokoe seek, *inter alia*, documents and information concerning the subscriber information and IP information of Google, Dropbox, Cloudflare, Ngrok, and Twilio SendGrid accounts which have been used in various phishing attempts to hack Mr. Al Sadeq's Legal Team's accounts and access confidential information.  It is believed that this information will aid Mr. Al Sadeq and Stokoe in determining the identity of the ultimate

MEMORANDUM ISO *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C § 1782

perpetrators behind the hacking campaign targeting Mr. Al Sadeq's Legal Team, and in turn, provide evidence germane to prove the Applicants' Claims in the Foreign Proceedings.

## ARGUMENT

Mr. Al Sadeq and Stokoe respectfully submit that this Court should grant the Application because: (1) it meets the statutory requirements set forth in Section 1782 (*i.e.*, the entities from whom discovery is sought reside in the district to which the application is made, the discovery is for use in proceedings before a foreign tribunal and the applicants are "interested persons"); and (2) the discretionary factors established by controlling case law weigh substantially in its favor (*e.g.*, whether (a) the target of discovery is a participant in the foreign proceedings, (b) the foreign tribunal is receptive to the use of the Requested Discovery, (c) the request is an attempt to circumvent foreign law, and (d) the request is unduly burdensome).  Granting the Application will serve Section 1782's "twin aims of providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to [U.S.] courts." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004) (internal quotations and citation omitted).

## I.   THE APPLICATION MEETS THE STATUTORY REQUIREMENTS

Federal courts may grant discovery within the United States for use in a foreign proceeding, under 28 U.S.C. § 1782(a), which requires "(1) the discovery is sought from a person residing in the judicial district in which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an 'interested person.'" *In re Adeal Imp. LLC,* No. 17-mc-80103-

13

HRL, 2017 U.S. Dist. LEXIS 133562, at *3 (N.D. Cal. Aug. 21, 2017) (quoting *Intel Corp v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246-47 (2004)).

To satisfy the first statutory requirement, Applicants must establish that Google, Dropbox, Cloudflare, Ngrok, and Twilio "reside" or are "found" in the Northern District of California.  Google maintains its headquarters in Mountainview, California,[4] which is in this District.  Dropbox,[5]  Cloudflare,[6] Ngrok[7], and Twilio[8] are headquartered in San Francisco, California, which is also in this District.  Thus, because Google, Dropbox, Cloudflare, Ngrok, and Twilio maintain their headquarters and conduct substantial activities that are central to their businesses in this District, the first statutory requirement is satisfied.

Turning to the second statutory requirement, an applicant must also demonstrate that the requested discovery "is for use in a proceeding in a foreign or international tribunal." 18

---

[4] See Our Offices, GOOGLE, https://about.google/intl/en_us/locations/?region=north-america&office=mountain-view (last visited Nov. 18, 2020).  This Court has previously found that for purposes of Section 1782, Google resides within this District.  *See In re Hideto Tomabechi*, No. 19-mc-80197, 2019 U.S. Dist. LEXIS 140369, at *6 (N.D. of Cal. Aug. 19, 2019) (finding the first statutory requirement of Section 1782 satisfied because Google is headquartered in Mountain View, California and, thus, in the Northern District of California); *Malsaeng Co. v. Young-Sung Kim (In re Request for Judicial Assistance)*, No. C15-80069 MISC LB, 2015 U.S. Dist. LEXIS 29962, at *5 (N.D. Cal. Mar. 11, 2015) ("Google, Inc. resides in Mountain View, California, which is in this District.").
[5] Dropbox San Francisco: Our HQ Office Tour, FACEBOOK, https://www.facebook.com/media/set/?set=a.774599595921878.1073741840.669409179774254&type=3 (last visited Nov. 18, 2020).
[6] *See M&S LLC v. M&S LLC*, No. 19-mc-80168-DMR, 2019 Dist. LEXIS 140311, at *2 (N.D. Cal. Aug. 19, 2019) ("Cloudflare is a Delaware corporation headquartered in San Francisco."); CloudFlare Headquarters and Office Locations, CRAFT, https://craft.co/cloudflare/locations (last visited Nov. 18, 2020) ("CloudFlare is headquartered in San Francisco").
[7] Ngrok is headquartered in San Francisco, California. See Ngrok LLC, OPENCORPORATES, https://opencorporates.com/companies/us_ca/201521010309 (last visited Nov. 18, 2020).
[8] See C3152782 Twilio Inc., CAL. SEC. OF STATE, https://businesssearch.sos.ca.gov/CBS/Detail (last visited Dec. 10, 2020).

MEMORANDUM ISO *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C § 1782

U.S.C. § 1782.  Courts in the Ninth Circuit have held that "that the 'for use' requirement 'focuses on the practical ability of the applicant to place a beneficial document . . . before a foreign tribunal.'"  *In re Qualcomm Inc.*, No. 18-mc-80134-NC, 2018 U.S. Dist. LEXIS 213919, at *4 (N.D. Cal. Dec. 18, 2018) (quoting *In re Pioneer Corp. for an Order Permitting Issuance of Subpoenas to Take Discovery in a Foreign Proceeding*, No. 18-mc-0037-UA, 2018 U.S. Dist. LEXIS 78609, at *6 (C.D. Cal. May 9, 2018)).  Thus, an applicant must establish that the requested discovery "is tethered to a specific foreign proceeding and is relevant."  *In re Qualcomm Inc.,* 2018 U.S. Dist. LEXIS 213919, at *4.

The Applicants believe that Google, Dropbox, Cloudflare, Ngrok, and Twilio are in possession of relevant documents, materials, and information which will aid in determining the identity of the perpetrators behind the hacking campaign targeting Mr. Al Sadeq's Legal Team. Thus, the requested discovery will support the Applicants' Claims in the Foreign Proceedings.  Accordingly, because the discovery Mr. Al Sadeq and Stokoe seek is for use in the Foreign Proceedings, the Application satisfies the second statutory requirement.

Lastly, Mr. Al Sadeq and Stokoe qualify as "interested persons" under Section 1782 due to their status as litigants (*i.e.*, the Claimants) in the Foreign Proceedings.  *See Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 912 (N.D. Cal. 2019) (finding that applicant was an "interested person" "because it is the plaintiff in the German Proceedings").  As the Supreme Court acknowledged in *Intel Corp v. Advanced Micro Devices, Inc.*, "no doubt litigants are included among, and may be the most common example of, the interested persons who may invoke [Section] 1782."  *Intel Corp v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004).  Thus, the third statutory requirement is satisfied.

15

MEMORANDUM ISO *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C § 1782

## II.     THE DISCRETIONARY FACTORS WEIGH IN FAVOR OF MR. AL SADEQ'S AND STOKOE'S APPLICATION

The discretionary factors set out by the Supreme Court in the seminal *Intel* decision and its progeny also weigh in favor of granting the Application.  These factors include: (1) "whether the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) "whether the request is otherwise unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264-65.

### A.  Google, Dropbox, Cloudflare, Ngrok, and Twilio Are Not Participants in the Foreign Proceeding

Where, as here, discovery is sought from parties not participating in the foreign proceeding, the need for court-ordered discovery is apparent.  "A foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence.  In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Intel*, 542 U.S. at 264 (citations omitted).  Accordingly, where the target of discovery is not a party to the underlying litigation, this factor weighs in favor of granting the application.  *See In re Letter Rogatory—Request for Int'l Judicial Assistance from the Harju Country Court in Estonia*, No. 17-mc-80044-MEJ, 2017 U.S. Dist. LEXIS 62115, at *8 (N.D. Cal. Apr. 24, 2017) (finding the first *Intel* factor satisfied when

16

1    "the record does not indicate Automattic is or will be a participant in the foreign proceedings,

2    thus the evidence requested appears to be beyond the Estonia Court's jurisdiction").  As such,

3    this factor weighs in favor of granting the Application.

4         **B.  The Foreign Tribunal Is Receptive to U.S. Judicial Assistance**

5         The second discretionary factor identified by the Supreme Court—the nature of the

6    foreign proceeding and the receptivity of the foreign tribunal to federal court assistance—

7    requires courts to consider "whether the foreign tribunal is 'willing to consider the

8    information sought.'"  *In re Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203-MEJ, 2016

9    U.S. Dist. LEXIS 152090, at *13 (N.D. Cal. Nov. 2, 2016) (quoting *Siemens AG v. Western*

10   *Digital Corp.*, 2013 U.S. Dist. LEXIS 159266, at *3 (C.D. Cal. Nov. 4, 2013)).  In weighing

11   these factors, courts may only rely on "authoritative proof that a foreign tribunal would *reject*

12   evidence obtained with the aid of § 1782."  *In re Joint Stock Co. Raiffeinsenbank*, No. 16-

13   mc-80203-MEJ, 2016 U.S. Dist. LEXIS 152090, at *13 (N.D. Cal. Nov. 2, 2016) (quoting

14   *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)).  *In Re Giorgio*

15   *Armani S.P.A.,* this Court concluded that the English Court would be receptive to assistance

16   from the U.S. courts.  *In Re Giorgio Armani S.P.A.*, No. 17-mc-80067-HRL, 2017 U.S. Dist.

17   LEXIS 83512, at *2 (N.D. Cal. May 31, 2017) (citing *Royal Bank of Scotland Plc v. Hicks*

18   [2011] EWHC (Ch) 287 [94, 95, 96] ("The ability to apply for disclosure under USC 1782 in

19   aid of its proceedings in this country is a facility available to any litigant.")).  Here, there is

20   no evidence that the discovery sought in this application would be "rejected" by the Courts of

21   England and Wales.  Nor is there any indication that the documents and materials sought

22

23

24

25

26

27                                        17

28   MEMORANDUM ISO *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C § 1782

would be inadmissible in the Foreign Proceeding.[9]  To the contrary, the documents,

materials, and information sought from Google, Cloudflare, Dropbox, Ngrok, and Twilio

concern potential evidence that would serve to support Mr. Al Sadeq's claims of misconduct

perpetrated by the defendants.  Specifically, it would support Mr. Al Sadeq's claim that the

defendants engaged, and continue to engage, in a pattern of human rights abuses and are

actively interfering with Mr. Al Sadeq's right to legal representation.  Given their relevance

to the proceedings, the Applicants have good reason to believe that these documents,

materials, and information could, and would, be considered.  Thus, this factor weighs in

favor of granting the Application.

### C.  The Application Does Not Circumvent the Rules of the Foreign Tribunals

The Application does not "attempt to circumvent" proof-gathering restrictions of the

Courts of England and Wales.  *See Intel Corp v. Advanced Micro Devices, Inc.*, 542 U.S.

241, 264-25 (2004).  Under this third factor, courts may consider whether there is "a

perception that an applicant has 'side-stepped' less-than-favorable discovery rules by

resorting immediately to § 1782."  *MetaLab Design, Ltd. v. Zozi Int'l, Inc.*, No. 17-mc-

80153-MEJ, 2018 U.S. Dist. LEXIS 5448, at *9 (N.D. Cal. Jan. 11, 2018) (quoting *In re*

---

[9] *In Re Giorgio Armani S.P.A.*, No. 17-mc-80067-HRL, 2017 U.S. Dist. LEXIS 83512 (N.D. Cal. May 31, 2017), this Court granted a Section 1782 application requesting a subpoena to be issued on Google requesting subscriber information associated with two Google accounts. In that case, this Court found that the there was no indication that the English court would reject the requested information. *Id.* at *2; *see also In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation pour le Traitement du Mais*, No. C13-80261-MISC (HRL), at *2 (N.D. Cal. Nov. 21, 2013) (in granting a section 1782 application for an order directing Google to disclose information related to a Google Gmail account the Court stated that it was unaware of any U.K. policy that "would cause them to reject U.S. court assistance").

MEMORANDUM ISO *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C § 1782

*Cathode Ray Tube Antitrust Litig.,* No. C-07-5944-SC, 2013 U.S. Dist. LEXIS 8255, at *3 (N.D. Cal. Jan. 17, 2013)).  The third factor also weighs in favor of granting the requested discovery, as this application is not an attempt to circumvent any foreign proof-gathering restrictions and there is no evidence to suggest that the United Kingdom's courts prohibit the type of discovery sought.

### D.  The Application Is Tailored to Avoid Unnecessary Burdens in Accordance with the Federal Rules of Civil Procedure

Finally, the fourth factor favors granting the requested discovery because the Application is narrowly tailored to include only relevant information and to avoid any undue burden.  In evaluating this factor, a District Court should be guided by the standards set forth in Federal Rule of Civil Procedure 26(b)(1).  *See, e.g., MetaLab,* 2018 U.S. Dist. LEXIS 5448, at *4 (finding that the petitioner's discovery request was overbroad under the standards of Federal Rule of Civil Procedure 26(b)(1)).  Under a Section 1782 discovery order, relevancy is defined as any information that "bears on, or that reasonably leads to other matters that could bear on, any issue that is or may be in the case."  *In re Application of Wallis*, No. 18-mc-80147-DMR, 2018 U.S. Dist. LEXIS at *10 (N.D. Cal. Oct. 24, 2018). Where requests are "narrowly tailored" and "seek[] only non-content subscriber information related to specific account activities during a limited time period" the requests do not impose an undue burden.  *See In re Giorgio Armani S.P.A.*, No. 17-mc-80067-HRL, 2017 U.S. Dist. LEXIS 83512, at *2 (N.D. Cal. May 31, 2017); *In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation pour le Traitement du Mais*, No. C13-80261-MISC LHK (HRL), 2013 U.S. Dist. LEXIS 169009, at *2 (N.D. Cal Nov. 21, 2013) (concluding that the petitioner's discovery request was narrowly tailored where it sought "only the following

19

information for a single Google account: (a) accountholder or subscriber information, including name, creation date, phone numbers or email addresses; (b) IP addresses from which the account was accessed, as well as time stamps indicating when the account was accessed; and (c) billing information").

The requested discovery directly bears on Mr. Al Sadeq's and Stokoe's claims that the defendants have engaged in a hacking campaign to gather confidential information regarding Mr. Al Sadeq's Legal Team and that this conduct is part and parcel of the Al Sadeq Litigation defendants' ongoing human rights abuses and attempts to thwart Mr. Al Sadeq's access to legal representation.  Thus, the requested discovery is highly relevant to the Foreign Proceedings.  Furthermore, the requested discovery would not be unduly burdensome for Google, Dropbox, Cloudflare, Ngrok, or Twilio to produce, as the requests are narrowly tailored in scope, should be readily identifiable and accessible, and seek non-content subscriber information.  *See In re Giorgio Armani S.P.A.*, 2017 U.S. Dist. LEXIS at *2; *In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation pour le Traitement du Mais*, 2013 U.S. Dist. LEXIS 169009, at *2.

Because the discovery requests are sufficiently specific to allow Google, Dropbox, Cloudflare, Ngrok, and Twilio to conduct targeted searches to identify and produce the documents, materials, and information with minimal burden, the Application comports with the Federal Rules of Civil Procedure and this fourth factor weights in favor of granting the Application.

20

1

## CONCLUSION

2      Based on the foregoing, the Applicants respectfully request that the Court issue an

3  Order granting the Application and authorizing the Applicants to serve the subpoenas

4  attached as Exhibit A, Exhibit B, Exhibit C, Exhibit D, and Exhibit E to the Kaufhold

5  Declaration upon Google Inc., Dropbox Inc., Cloudflare Inc., Ngrok, LLC, and Twilio, Inc.

6

7

8  Dated:  December 22, 2020

9                                                          **KAUFHOLD GASKIN GALLAGHER LLP**

10

11                                      By:      /s/ Steven S. Kaufhold_
                                                 Steven S. Kaufhold
12                                               388 Market Street
                                                 Suite 1300
13                                               San Francisco, CA 94111
                                                 (415) 445-4621
14                                               skaufhold@kaufholdgaskin.com

15

16                                               **TAB & ROSENFELD LLP**
                                                 Tab Rosenfeld (*pro hac vice* pending)
17                                               1180 Avenues of the America, Ste 1920
                                                 (212) 682-1400
18                                               tab@rosenfeldlaw.com

19                                               *Attorneys for Applicants Karam Salah Al Din*
                                                 *Awni Al Sadeq and Stokoe Partnership*
20                                               *Solicitors*

21

22

23

24

25

26

27                                                  21

28  MEMORANDUM ISO *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C § 1782